## 1392. WILLIAMS *v.* THE STATE.

1. Where, in a prosecution for the unlawful sale of whisky, a defendant states that he, as agent for the buyer, procured the whisky in question from a named illegal vendor of liquors, or "blind tiger," and the alleged seller is not produced as a witness, the jury should be instructed, upon proper written request therefor, that no witness is required to incriminate himself. The fact that a witness is not compellable to testify against himself may or may not be a sufficient explanation of

the absence of such witness in a case in which one who is accused of selling intoxicating liquors relies upon his statement that the intoxicating liquor delivered by him to a purchaser was not in fact sold by him but was procured by him from another individual, identified and designated by name, and whose existence and present residence are unquestioned.

Accusation of unlawful sale of liquor, from city court of La-Grange—Judge Harwell. August 19, 1908.

Argued October 8,—Decided October 26, 1908.

*E. A. Jones,* for plaintiff in error.

*Henry Reeves, solicitor,* contra.

RUSSELL, J. This case presents but a single point. The defendant was indicted for the illegal sale of alcoholic, spirituous, malt and intoxicating liquors. The evidence in behalf of the State conduced to show, that he "waited on the boys around town," and two witnesses testified that they had gotten him to get whisky for them; that they would give him the money, and he would go off and be gone about twenty minutes to a half hour, and maybe longer, and come back with the whisky; that "there are blind tigers around Mountville, and the way the boys usually get whisky is to have some negro like him, whom they send for it." Another witness testified, that he had known the defendant for a long time and had frequently made him get whisky for him; that the defendant waited on "all the boys around Mountville," carried notes, ran errands, and did anything they wanted him to do, and that when they wanted whisky they would send him for it; that he had acted "as a sort of flunkey for all of the white boys around Mountville for a long time." The defendant, in his statement to the jury, said, that he got the whisky for the witnesses at the time that they had testified to; that he knew where the blind tigers were and they would send him for it, but that he had never sold any whisky; that he got the whisky from Tom Boddy and Richard Boddy, and that they were in the chain-gang for selling whisky. One of the witnesses for the State testified that Tom and Richard Boddy had been sent to the chain-gang for selling liquor. It appears from the record that the solicitor, in his argument, insisted that the defendant should have had the two men brought from the chain-gang and made them corroborate his statement to the effect that he purchased liquor from them and that he was not the seller, the

argument of the solicitor, as quoted, being, "Why has not the defendant got those two men here? He could have done so, because they are in the power of the State and under its control, and he could have had them here if he had wanted them, to corroborate his statement." In reply to this argument counsel for defendant requested, in writing, the following charge to the jury: "I charge you, that if the defendant, as he claimed, was only acting as agent for some one else, he could not, by subpœna, force or require the principal to disclose, under oath, the fact that he sold it to the defendant; for the reason that no man can be required to give evidence against himself."

We think the court erred in refusing to give the charge requested. When the State proved that the defendant took the money and shortly thereafter returned with whisky and delivered it to the purchaser, the presumption arose that the defendant himself was the seller, and a prima facie case of guilt was established. It then devolved upon the defendant to disclose, if he himself was not the seller, who was. He could rebut the presumption raised against him, either by sworn testimony or by his statement alone, if the jury was prepared to believe it. Having stated that he purchased the whisky as agent for the buyers, and that he was not an agent of the sellers, he could corroborate his statement if he wished, and if it were in his power to corroborate it, by sworn testimony. When, however, the defendant disclosed the parties from whom he claimed to have bought the whisky, if it was proper for the solicitor to comment on their absence, it was likewise necessary for the court to instruct the jury the principle which was requested,—namely, that no witness is compellable to criminate himself. When an argument is being made which a party or his counsel thinks is improper, he can either object to the argument, or, by an appropriate request, invoke the ruling of the court upon its property. We do not know whether objection was made to the argument or not in this case, nor is it material. We think the solicitor had the right to use the language he employed in his argument. But when the sole issue before the jury was, whether they would accept the explanation offered by the defendant in his statement, as sufficient to rebut the prima facie case in behalf of the State, and when the argument was being made that the statement of the de-

7

:fendant was probably untrue, because the sellers were not called as witnesses, it was most material to the defendant's rights that the jury should be told that even if the defendant had procured the presence of the witnesses, they could not be compelled to testify. The request was appropriate and timely. It embodied a principle of law which the jury could and. should have considered in. connection with the argument that the witnesses were absent. We can not know what effect the suggestion of the solicitor had upon the minds of the jury; but if, indeed, the absence of the parties that the defendant claimed to be the sellers caused the jury to disbelieve the defendant's statement, it is probable that if the jury had been informed that even if the witnesses were present they could not be made to testify, this consideration would have detracted greatly from the weight attached to the circumstance of their absence.          *Judgment reversed.*